Mr. Chief Justice, and may it please the Court, the question presented is whether Congress abrogated sovereign immunity with respect to damages actions against Indian tribes in the Bankruptcy Code. The Code provision specifying the governmental units whose immunity is abrogated, section 10127, names individually the United States, states, and foreign states, as well as the departments, agencies, and instrumentalities thereof, followed by a residual clause, quote, or other foreign or domestic government. That definition, like the Bankruptcy Code more broadly, does not refer to Indian tribes specifically, the most obvious and natural means of including them, as Congress has done in every other statute abrogating tribal sovereign immunity. Accordingly, the best construction is that tribes are not included. But this Court need not decide the best construction. All parties agree that the clear statement rule governs, and because of that, the question is whether Congress has unequivocally included tribes so as to abrogate their sovereign immunity. In other words, as this Court has framed the inquiry, is there any plausible way to read the provision as omitting tribes? Petitioners easily surmount that bar. The First Circuit majority's reliance on the generic phrase, other domestic government, to sweep in tribes, and apparently only tribes, rests on a syllogistic interpretation of the terms domestic and government in isolation. Even if other domestic government could reasonably be construed to refer to tribes, despite their sui generis nature, the provision as a whole doesn't come close to abrogation. Indeed, Congress has long treated tribes differently than the governmental entities enumerated in Section 10127, including under the federal bankruptcy statute preceding the code. Congress gave no indication, let alone an unmistakably clear one, that it newly intended to treat the tribes the same in the current code. I welcome the Court's questions. Uh, the, um, so in your thinking and argument, Congress would actually have to say tribe? Well, Your Honor, I think we could come up with hypothetical formulations that Congress has never used in order to make it abundantly clear that they're, that they want to cover Indian tribes, but those would be hypothetical. And I think it's fair for this Court to take into account two that is abrogate the sovereign immunity of tribes without mentioning tribes. Now they could do it, you could imagine, in some formulation, but presumably that formulation would not use the standard locution that Congress has always used when referring to the big four. And by the big four, I mean the United States, the states. Let me, I understand that argument, but can you think of any other government, governmental, uh, unit that would be required to be named specifically as you seem to suggest the tribes would have to be? Well, again, Your Honor, it's normally the practice when, when Congress is abrogating state sovereign immunity, it mentions states. I know, but states are, states have a different, uh, they have sovereign immunity that has constitutional basis. Let me... Your Honor, just to respond to that, this Court has been abundantly clear the United States concedes it, respondents concede it, that it's the same clear statement rule that applies for states, the United States and Indian tribes. And I know that, that, uh, some justices on the Court have disagreed with that, but that's currently the law and the other side accepts it. Beyond the, uh, your clear statement rule, can you give me an example of any other government that falls outside of the, uh, catch-all phrase? Uh, that would, would fall within the It seems to capture all governments. Oh, sure. Your Honor, I, you know, I guess Indian tribes is the most obvious example, but... Well, it's the only one so far. Sure. Well, here's, here's one other example. You can imagine, um, governmental entities like the International Monetary Fund, not purely domestic because obviously it has foreign governments involved, but not clearly foreign because the United States is a member. So you, IMF, World Bank, other entities that have recognized to possess immunities, but not clearly domestic and not clearly foreign. In fact, Congress has passed a separate statute called the International Organizations Act to deal with those not purely domestic and not purely foreign entities. So there's another example of an entity that would not fall within your, within that residual clause, Your Honor. What if the statute said every government? Your Honor, that would be harder if it said every government. Um, uh, but if it said every government after specifically enumerating... No, no, just said every government. Yeah. If it just said every government, again, that's a harder case. I, I, I still wouldn't give it up because this court has been very clear that Congress has to be specific, but I grant you that would be a harder case. And Chief Justice, what I would respond is Congress has used that formulation and then felt the need to clarify. I would point you to the Resource Conservation and Recovery Act, and that's cited on page 25 of our brief, but I think our brief undersold it. If you actually read it in full and quote it in full, it uses a similar formulation. It says you can bring civil actions against persons, including the United States and any other governmental instrumentality or agency. So broader than the residual clause here, similar to your formulation, but then it felt the need to go and define person. And in the definition of person, it lays out the big four states, United States, um, um, doesn't mention foreign governments and then cross-references the definition of Indian tribes explicitly. But Mr. Shah, what if, what if Mr. Chief Justice's hypothetical said every government, would state sovereign immunity be abrogated? Is that a hard question? Yeah, I, I, I think... It seems to me like you're saying, it sounds to me your answer when you said you wouldn't give it up. It's hard for me to see how that would be a hard question for the United States or for a state. So it sounds to me like you're carving out an extra special, super, super clear. If we lose under that formulation, that's fine. Why would you, why wouldn't you give it up? Why wouldn't you? I will give it up. Well, you didn't give it up at first. Why did you hesitate? Is it that you have to be more explicit for Indian tribes and other governments? The reason why, the reason why I hesitated is I'm not sure the United States would give it up. You can ask counsel for the United States. They've been very parsimonious when it comes to waiving the sovereign immunity of the United States, but let, I'll be willing to give it up. Here's what I think that the modifier here is not every government. It's after you have a list that names three of the big four, the United States, states, and there's only four entities that have been well-recognized to have sovereign immunity. The United States, states, foreign governments, and Indian tribes. You have a statute that painstakingly names the other three in an abrogation provision for some reason omits what the first circuit thought to be the only entity covered by the residual clause. Why would you have a residual clause if it's only there to cover Indian tribes? Congress and every other statute, when they wanted to abrogate the sovereign immunity of Indian tribes, has said Indian tribes. Indian tribes is shorter. You said, Mr. Shah, for some reason omits. Do you have a reason? Do you have a theory? Sure. Your Honor, I actually have three potential reasons as to why Congress might have omitted Indian tribes. Of course, Bay Mills, this court has said, that's not the right question in a clear statement case, but I'm going to answer your question. We've also said that there should be no, this is not a magic words requirement. And I think that the difficulty for you is aren't you really making it into a magic words requirement? So let me give you the three potential explanations and then answer the magic words question. The first one may take a minute, so please bear with me, but I think it's illuminating. The omission of tribes becomes much easier to understand in light of the baseline against which Congress was legislating in the 1978 code. The pre-code federal bankruptcy statute, which had been on the book since 1938, that treated tribes differently than the governmental units specified in 101-27. So the disparate treatment is nothing new. And let me be very specific. The other side points to the fact that in the current code, governmental units are entitled to preferential treatment for certain claims, like tax claims. They say Congress couldn't have meant to leave tribes out of that because tribes also levy taxes. But what they don't acknowledge is the pre-code statute, which is cited on page 20 and quoted on page 21 of our reply brief, in the pre-code statute, Congress did exactly that. It extended preferential treatment to tax claims to the United States, states, and municipalities, but not Indian tribes. So fast forward to 1978, rather than list out the entities separately, Congress creates the definition of governmental unit, and it uses the same sort of governmental units it used in the to tax claims. It references that definition of governmental units, which doesn't include Indian tribes, just like they weren't included under the 1938 statute. So my answer to you, Justice Kagan, is, in short, is it's the status quo. Congress didn't extend similar treatment to Indian tribes under the 1938 statute. Now, whether it was conscious or not So if that's right, Mr. Shah, I mean, that sounds very considered on the part of Congress. And then wouldn't you have something that says, but not Indian tribes? Or at least, wouldn't you have said to yourself, you know, if we put in a catch-all clause after we list all these governments, somebody is going to think that includes Indian tribes? Justice Kagan, but not Indian tribes is the exact opposite of a clear statement rule. Because of the backdrop of the clear statement rule, in 1978, Your Honor, the point of the question is, if you were really meaning to exclude Indian tribes, you wouldn't have said, here are the governments, and everything else that we can think of. Well, it may not be that they were trying to exclude Indian tribes. They may have just been trying to continue the status quo from 1938, which was to extend the preferential treatment to the United States, states, and municipalities. The 1938 code makes no mention of Indian tribes receiving that special treatment. So maybe they just went to do the status quo. Now, again, Your Honor, none of us know what Congress actually had in mind. What were your other two theories? Oh, the other two are more affirmative, right? I don't know if that was conscious or accidental or what, Justice Kagan. What I do know is it wasn't clear. But the other two reasons might be more affirmative reasons why Congress would want to treat Indian tribes differently. Again, thinking in 1978, remember the code was enacted six months after this court's decision in Santa Clara Pueblo, which emphatically reinforced the clear statement rule with respect to tribes. Around that same time, Congress was passing statutes, and they're included on page 11 of the law professor's amicus brief. These were statutes that were designed to augment tribal self-determination and tribal economic stability. So perhaps Congress made the decision, at the same time they're trying to augment tribal self-determination and tribal economic stability, they're not going to abrogate tribal sovereign immunity. That's one potential. That's the second potential explanation. Third potential explanation is that, unlike the states in the United States, which participated in the constitutional convention that this court said in Katz kind of struck a bargain in the federal bankruptcy clause that would essentially constitute a semi-waiver of their sovereign immunity, obviously, as this court has said, the Indian tribe didn't participate in the constitutional convention. So it would be absurd to assume that they struck—that's the court's words, not mine—to assume that they struck a similar sort of bargain. And so perhaps Congress—again, none of us know, because Congress doesn't refer to tribes even once in the legislative history or in the text—but perhaps they thought, okay, well, it's not as fair to abrogate the sovereign immunity of Indian tribes who weren't part of that deal or bargain struck in the constitutional convention. Mr. Shaw, just out of curiosity, could I ask you a few questions about the relationship between the tribe and Lindgreen Loans? Yes. Who actually operates this? The tribe does, Your Honor. This is not a rent-a-tribe situation. The other side has never alleged it. Actually, this is a true tribal business. The headquarters is on the reservation. They have 50 to 60—this is all outside the record, but I'm just answering your question—50 to 60 employees. The money comes from the tribe, tribal accounts. This is a fully tribal operation. Of course, they use third-party vendors, servicers and all like any other business that may not be tribal lenders, but this is not one of those situations that the amicus brief talks about in other cases about renting tribes' immunity. Well, what percentage of the people who are actually running this business are tribal members? Again, this is outside the record. My knowledge—and if you take out the outside vendors, 100 percent is my knowledge. It's got 50 to 60 employees who operate out of the headquarters located. Now, I can't tell you whether all of those 50, 60 employees who work in the headquarters on the tribal reservation are tribal members, but that's the extent of my knowledge. Do you dispute the facts that are set out in Respondent's brief about what was done to— Your Honor— His client that even after he filed the bankruptcy petition and notified Len Green that he had done so, they continued to contact him, and he attempted to commit suicide, and even when he was in the hospital after this unsuccessful attempt, they were calling him at the hospital to collect this loan? Your Honor, this was on a motion to dismiss. That was the posture. There has been no factual development, and the tribe would actually have responses. There hasn't been any factual development here. And so what I will say is it is Len Green's policy, Your Honor, and this presumably, if we were to prevail, or if there were further factual development, it is Len Green's policy not to continue collecting debts once it's notified of an automatic statement. It doesn't think it's obligated to abide by an automatic stay. It is, Your Honor. That is the tribe's view. The tribe's view is not, Your Honor, that the bankruptcy code doesn't apply to it. What we have here is a damages action for violation of the automatic stay that's seeking hundreds of thousands of dollars in actual damages, like emotional stress damages and all of that. It's not that it doesn't have to abide by an injunction, an Ex parte Young injunction, or just forget Ex parte Young, that it does believe it has to abide by the automatic stay. However, if there is a violation of the automatic stay, one could imagine an Ex parte Young action that would sue the tribal officer. They would have to abide by that, as this Court said in Bay Mills. What the tribe is saying is you can't sue them for hundreds of thousands of dollars of actual damages. That's at the core of sovereign immunity, and that's what is at stake. Not the tribe's belief it doesn't have to comply with the injunction under Ex parte Young to abide by the automatic stay, but rather just the hundreds of thousands of dollars. This might be an easy case if it was only that, but there's some more. If they retrain tribal immunity, they would be immune from avoidance actions seeking to undo fraudulent transfers of money, as the Sixth Circuit held in Greentown. Why would Congress want the tribe to keep fraudulent transfers of millions of dollars? Your Honor, I think that is an open question, and the tribe doesn't take a position on that, actually. We are here about actual... You're really going to say that Nordic Village is unclear about that, as is Greentown unclear about that? Cats, Your Honor, which came after Nordic Village, cuts the exact opposite way. What this court said in Cats is, unlike Nordic Village, which seemed to think this was a damages action, the court in Cats viewed it more as an in rem action. If it's an in rem action, it's property of the state, then the tribe would have to return the property. So the latest word from this court is, in fact, suggesting that it's an in rem sort of remedy, in which case the tribe would be responsible under expectation. Tell me why Congress would want to leave that unclear. It seems to me, with the catch-all phrase, that it wanted to deal with sovereign immunity and to give certain benefits for it and take away certain restrictions on subjecting it to things like fraudulent transfer. Well, Your Honor, if it had wanted to clearly include Indian tribes, which, of course, it had to do under this court's longstanding jurisprudence reiterated just six months before the code, if it wanted to clearly include Indian tribes, it could have enumerated them just like Congress did with respect to the United States, states, foreign governments, and just like Congress has done in every other statute we list, both in the abrogation context and outside of the abrogation context. Clearly perplexing in this statute, because you're absolutely right. In every other situation, it has listed Indian tribes when intended. So that is very, very puzzling. But equally, I guess the question is, if Congress forgot Indian tribes, is the structure of this so clear that it was meant to include them? Well, Your Honor, no. I think for the reasons that I've said, it excluded them from the The bankruptcy code in the Chandler Act since 1938 did not extend that preferential tax treatment to Indian tribes. But we have a very different history after 1938. We have a history of the court itself saying that sovereigns are immune from things like foreign fraudulent transfers. Right. And so we have a point, the juncture point, in which Congress is saying, okay, everyone, foreign or domestic, is going to be included, is going to have their sovereignty waived. We're going to give them certain benefits, and they're going to be subject to certain obligations like not to do, not to violate the stay, and not to engage in fraudulent transfers. Okay. So I guess a couple of responses. One is, again, the tribe, even if we prevail here, the tribe does have to abide by the automatic stay. And if this court abides by its view in Katz, it would have to return any fraudulent transfer activity. But let me get beyond that and address your question more head-on. If they had used the formulation that you said in your question, every government, foreign or domestic, kind of similar to the Chief Justice's hypothetical, and that's all they said, I would have a tougher argument here. My only argument left would be, well, tribes are kind of sui generis, not really domestic, not really foreign, and maybe I win or lose on that. But that's not what they did here. In 1978, six months after this court issued Santa Clara Pueblo, which refers to the tribes that says they remain a separate people, and that Congress has to use unequivocally clear if it wants to abrogate the sovereign immunity of tribes. Six months later, in promulgating the code, they do the most opaque thing possible, which is to list all of the other entities entitled to sovereign immunity, the United States, states, and foreign governments, and omit Indian tribes when it's the easiest thing in the world, when in every other statute in the history of the United States, it has referred to Indian that it meant to abrogate tribal sovereign immunity when it had never conferred the benefits of bankruptcy, even under the prior bankruptcy code. I think under normal statutory interpretation, we should prevail. But under the clear statement rule, it shouldn't be a close question. Mr. Shaw, I think the gist of some of the questions is, while prevailing here would advantage the tribe, obviously, in terms of monetary claims against it, it would also mean that you lose certain benefits for tribes. And on a net basis, could Congress have been concerned that the rule you're asking for will hurt rather than help tribes? I think that's the gist of some of the questions here, and I just want to get your response to that. Sure, Your Honor. Well, of course, the country's largest tribal organizations have filed an amicus brief. They're all lined up on your side. I don't see any amici on the other side. That wouldn't be the proper judgment. But to answer your question more fundamentally is, yes, that is a judgment for Congress to make. That is part of the reason why there is a clear statement rule. That is, if Congress, we want to be really careful that Congress made that judgment and didn't accidentally or unintentionally or otherwise abrogate the sovereign immunity of Indian tribes. Here, this is the furthest thing from a clear statement, given the backdrop against which Congress was legislating in 1978 and the fact that every other time they wanted to do it, the easiest thing in the world is to add Indian tribes to the list of entities that they had done. And again, this is not the every government, any government under the sun hypothetical. This is where they painstakingly enumerated the entity. Okay, so what if they painstakingly enumerated, let's say, said, you know, no sovereign immunity for Indian tribes, the United States, or any other domestic or foreign government? Yeah, I bet you states, I bet you states would be in your arguing it or more. But should they win? I mean, it seems to me like one way to read this phrase is it's an attempt to cover the waterfront. I'll grant you that it's a little bit odd to have used magic words for the other entities, right? But it looks to me like an effort to cover the waterfront. We have to have a clear statement rule. But I just if you if you have a description at the end, that's a catch all right, that can be that it seems to me like to win, you have to say that domestic and foreign means not here or there. But but a word that actually doesn't seem to me the definitions about you know, derives from the foundational document or gets its authority from that's not even really clear to me that that's what the definitions you cite mean. Sure. So Your Honor, I guess two responses. One is under a Toscadero. I think the states would have a pretty strong argument, given a Toscadero and how emphatic it is on mentioning states very specifically. But if I'm wrong about that, if you were to find in your hypothetical, that a look, even though you mentioned states, Indian tribes, foreign governments, and you left states under the 11th Amendment to the residual clause, if you thought that was specific enough, our case is stronger because states at least you could say, gosh, you are clearly domestic. There is nothing not domestic about you state. Indian tribes, this court has grappled for two centuries in trying to describe Indian tribes and its opinions. It is said they are not clearly foreign, because obviously they have connections to the United States. They are not purely domestic, because they have pre constitutional residual sovereign power. But it says domestic or foreign. Right, domestic or foreign. There are neither. Tribes are sui generis. The other governments have sovereign immunity as well. I mean, the thing that I'm struggling with is that all of the passion about sovereign immunity and not abrogating lightly, I think, would make more sense, at least to me, if we didn't have a clear statement that Congress was interested in abrogating sovereign immunity. It sort of goes back to Justice Barrett's original point, which was it sounds like you're asking for a special separate rule that preserves the sovereign immunity of tribes in a circumstance in which Congress has clearly indicated that it wants to abrogate the sovereign immunity of governments. So, Your Honor, I don't quibble with you. May I? Sure. I don't quibble that Congress clearly indicated its intent to abrogate sovereign immunity of governmental units, but it then provided a definition of governmental units. Right? And the clear statement rule applies to both parts. It has to clearly express its intent to abrogate sovereign immunity, but then it has to clearly identify the governmental units whose immunity it is abrogating. And in that definition, it enumerates three of the big four. Why leave out when in every other instance when Congress did want to include Indian tribes, it's named it by name and leave it to the most vague residual clause, which might amply cover states in the United States, because the United States and states are clearly domestic. Indian tribes, not clearly domestic, see 200 years of this Court's opinions. Thank you, Counsel. Not clearly domestic, but dependent domestic nations is a common term, I would say, perhaps the most common. Yes, Your Honor. That is a term of art. Domestic dependent nation is different than the generic phrase domestic nation. We have searched the United States Code, there's not a single reference to domestic government encompassing Indian tribes. Domestic, if Congress had used domestic dependent nation, I would not be standing here. I would concede completely that that is a term of art that's interchangeable with Indian tribes. Domestic government is not. You've mentioned a couple times the big four. Yes. Is there, where has that been used before? So I will cite, so on page 24 and 25 of our brief, Your Honor, we cite some exemplary statutes. I can represent to you, there are many more. That's both in the context of abrogation and outside of, so footnote two on 24, these are all statutes outside the context of abrogation. And if you look at it, for example, in any kind of statute. So you're just saying that there are collections of statutes where you'd see the four in the United States? That's the locution that Congress uses when it wants to cover those four governments. That's even more strongly in the abrogation context because of the clear statement rule. That is, in other words, I can't find a single example, and the other side hasn't given one, where it's used the hypothetical that you gave me to start off with, which I probably lose under, but any and every government under the sun. The one example I found of that is in that example I cited to you, the Resource Conservation Recovery Act and the Clean Water Act repeats it. But even there, Congress felt the need to then define that term and lay out the big four. Well, I don't mean, it sounds a little bit like a, you know, a college football poll, but there are, there are others here that I can imagine in other contexts would think, you'd think of them before you'd think of Indian tribes. I mean, it's United States, state, municipality, foreign state, agency of the United States. I don't know, I think it would depend on your context and how closely it was related to Indian affairs and issues. I don't know that in bankruptcy, you would naturally say when you want to list the governments that Indian tribes are going to be in the first four. Sure, Your Honor. When I mean big four, I mean really when we're talking about abrogation because there really only are four entities that this Court has recognized as having sovereign immunity in which to abrogate. United States, states, foreign governments, Indian tribes, that's it. Justice Thomas, Justice Sotomayor. I would call it the big five, territories. Territories, fair enough. Thank you. And Justice Sotomayor, what I would add is the statute does include territories by name, section 10127. So when there's doubt, it includes it by name. So now they've included four of the big five, even more in my favor. Justice Kagan. Justice Gorsuch. Justice Barrett. Justice Jackson. Okay. Thank you, Counsel. Mr. Rappaway. Mr. Chief Justice, and may it please the Court. The Bankruptcy Code provides that a governmental unit may not assert sovereign immunity to bar a motion to enforce the automatic stay. The defined class governmental units includes tribes because it includes foreign or domestic governments. Tribes are governments because they exercise governmental authority and perform governmental functions. They are domestic governments because they are subject to the authority of and within the territory of the United States. The Bankruptcy Code respects tribal self-government. It does not treat tribes like private parties, but accords them the same status as federal, state, and foreign sovereigns. It recognizes and privileges their governmental functions, which include taxation, the exercise of the police and regulatory powers, and the making and enforcement of family law. But it also holds them accountable, as it does other governmental units, for violations of the Code's critical features that define and enforce the Bankruptcy Court's exclusive jurisdiction over the debtor's estate to protect debtors and to ensure equitable treatment of creditors. You have heard from the band that if Congress had meant tribes, it would have used the particular word tribes. But Congress can speak clearly in more than one way. And so the focus here should be the unambiguous words that Congress did use, not other words that it might have used, but did not. I welcome the Court's questions. Petitioner said that there has been a change in the treatment of tribes under the new Bankruptcy Code. Do you agree with Petitioner? Or do you, and if not, could you elaborate on your differences? I agree that some of the priority language that they cite in their reply does not include tribal governments. But I would add what I think is an important point, that that status quo is not the status quo today. The definition of governmental unit that Congress created in 1978 is clearly broader than the provisions that are cited in the reply. For example, foreign governments are included now, as they were not previously included. I'm not quite, Petitioner made the argument that the domestic and foreign government distinction doesn't seem to work for tribes, that it's neither foreign nor domestic. It seemed, at least that's the suggestion that I heard. What do you think? So we do think that tribes are clearly domestic. That is our primary position. But we also think that if you thought that tribes had characteristics of both, they would still be covered by the statute. Because the phrase is not just domestic governments, but foreign or domestic governments. And I would point the Court to section 102, subsection 5 of the Bankruptcy Code, which states that in the Bankruptcy Code, or is not exclusive. So when Congress says or, as it did in this phrase, it doesn't mean one or the other, but not both. It means either or both. And so to the extent that you have a entity that has both foreign and domestic characteristics, whether it's a tribe, whether it's an intergovernmental organization, it would still be covered by the clause. And we think that applies to all governments. Rep, let's take the first part of that. I mean, you say they are clearly domestic. And you cite Chief Justice Marshall's domestic dependent nations language. But even that contains a hint of the difficulty here. Domestic dependent nations, suggesting that there's something other than a state. And then, of course, in Parks, this Court said that tribes are in many respects foreign and independent nations as well. What do we do with that? Well, let me start with Chief Justice Marshall and the Cherokee Nation and say that opinion does decide very clearly that tribes are a state. And so the... That they're a state? That they count as a state. He says that the council that was attempting to establish they are a foreign state have... Foreign state. Council was attempting to establish that they were a foreign state. And so Chief Justice Marshall says they're definitely a state because they have a government. I mean, I'm paraphrasing slightly. But I do think the opinion will bear this reading. But they're not a foreign state because they are not foreign to the United States. So I think that a close reading of that reinforces... How about Parks? Um, I am blanking on the exact passage that Your Honor is citing. But I think that generally when this Court has... Many respects a foreign and independent nation. Um... We said similar things about the territories, too. I mean, we actually, in the Crazy Insular cases, said they're foreign to the United States in a domestic sense. Well, if you were to conclude... Whatever that means. Understood, Your Honor. So if you were to conclude that there's doubt whether that they're domestic, and then I would proceed to my fallback, which is the government's legalization. Before we leave that, though, let's say... I'll give you a silly hypothetical. Let's say I invite you to go to my refrigerator and take out either vanilla or chocolate ice cream and help yourself. Does that license you to take the last scoop of the chocolate vanilla swirl ice cream in a separate container? Maybe one with a note on it that says, reserved for a later birthday? In that case, Justice Gorsuch, the or would be exclusive. I would understand... As your guest, I would be bound to read that or as exclusive. One or the other, but not something with characteristics of both. But in the Bankruptcy Code, or is not exclusive. And so if it has characteristics of both, it's still included. But I don't want to give up the argument that tribes are domestic. Because I think that the question here is not whether there may have been doubt at one time. And certainly, there is some doubt expressed before Chief Justice Marshall came down the way he did in 1831. And there may be later cases, the insert cases, that use the term foreign with respect to things that would be domestic under our test. But rather, what would Congress have meant in 1978 by using the word domestic? And I think that by 1978, after the many times that this Court had used the phrase domestic dependent nations, and that a reasonable person reading the statute at that time would say, yes, tribes are clearly domestic. That is clear now, even if it might have been in doubt at one time in the past. Mr. Rapoport, I mean, this is just a very odd statute. It lists all these different kinds of governments, governments that really never show up in our abrogation cases. And it doesn't list Indians. It doesn't list tribes, even though, you know, you want to call it the Big Four, you want to call it the Big Five. It's pretty clear that tribes are out there and that they have sovereign characteristics. And this statute just doesn't say tribes or Indians. Why not? So I don't know what was in Congress's mind, Your Honor, and none of us can really know that. But when I look at the words that they enacted, it looks to me like they were trying to cover the waterfront, as Justice Barrett suggested earlier. And I think that this type of enumeration, lots of different governments with lots of different characteristics, with very different relations to the United States, and then a concluding clause that says, or other foreign or domestic governments as well, is a natural way to do that. I mean, I agree with you that this looks like a trying to cover the waterfront statute. It just has this question really at the heart of it. Like, if you were trying to cover the waterfront, why aren't you listing tribes, which is like so much more obvious than all the things that they do list? I do not have an answer to that question other than to say that I think that the Court should construe the statute according to the words that Congress used. And I think that if you were in any doubt about that from the language alone in 101-27, you should look to the other supporting provisions of the statute that also, I think, unequivocally support our reading. What about the historical practice, though, of Congress using tribe when it wanted to tribes against that backdrop? Doesn't the failure to mention tribes that Justice Kagan points out create at least some ambiguity? I think that's overstated, Justice Kavanaugh. I think that if you look at the statutes that they've cited, I mean, we focused specifically on the abrogation statutes. There were particular reasons for Congress to name tribes rather than using a general term, because the general terms they were using were general terms that would also cover non-sovereigns. And under Atascadero, if you use a general term that covers both sovereigns and non-sovereigns and you authorize suit, you have been clear enough. Obviously, that's not this case, because 106A says we are very clearly abrogating sovereign immunity. But in the cases that they deal with, either you have the reference to tribes because they're dealing specifically with tribes, such as in the — in IGRA and there's — the Indian — I think the Indian Self-Determination Education Act has an abrogation as well. But regardless, they're tribe-specific statutes. Or they're statutes that fit the model of, well, we're going to say that a municipality can and can't do certain things and we'll include tribe in a municipality. Well, ordinarily, you wouldn't read the phrase municipality to include tribe, so you have to include it. And likewise, with the phrase person, you ordinarily wouldn't read the phrase person to include a sovereign, like a tribe, so you have to include it expressly. But when you have a statute that is dealing specifically with governments, that uses the general term governmental units and the meaning of the defined term itself is relevant to the court's statutory analysis, and governmental units standing alone would ordinarily be read, I think, to include tribes. MS. GOTTLIEB Suppose we think that — suppose we think that Congress just forgot about tribes. Do you lose then under the clear statement rule? MR. So I would resist the premise, but if you think that — when you say Congress forgot about tribes, if individuals — if the people who wrote the words on the page in their individual human minds had — were not thinking about the problem, but they used words that by their ordinary and natural meaning include tribes, I think we still win. And I think that the goal of trying to pursue that subjective mental state of individual legislators or individual drafters is one that this Court has largely abandoned, and I think that's the approach we would urge in this case. And if I could go back for a second to the broader context, I would also like to point to the other ways in which the Code uses the phrase governmental unit to — largely to confer benefits, but our point isn't really that they're benefits. Our point is that the — and we're not asking the Court to weigh costs and benefit. We're asking the Court to read the statute as a whole. And so the kinds of entities that Congress did have in its metaphorical mind when it passed the Code were entities that tax, because it was talking about governmental units as levying and assessing taxes, and it made special exceptions to ordinary bankruptcy rules for taxes because taxes are important. And it was also thinking about entities that exercise police and regulatory power, which made exceptions to the automatic stay for exercises of police and regulatory power because that's important, too. And then family law. We give the example in our brief of domestic support obligations, child support and alimony that are defined in Section 10114A to include these, you know, partially by reference to governmental units, and Congress gave special treatment to that because that's important. And looking at all of that together, that tells you that tribes perform the kind of governmental functions that the Code recognizes and gives that special treatment to. I would — and those exceptions, you know, there was a point made in the reply, I think, that, well, it doesn't matter if there's an exception for tribes because there are lots of other exceptions as well, but the exceptions that Congress made are part of a detailed system that balances bankruptcy and non-bankruptcy issues and that does not — I concede it's possible Congress might not have thought of governments engaging in those type of loans, these triple-digit online loans in 1978. Certainly they wouldn't have contemplated the Internet. But nonetheless, there is no exception for this type of conduct. There shouldn't be an exception for this type of conduct, and you don't have to read  it. Justice Thompson? Justice O'Mara? Justice Kavanaugh? Justice Jackson? Can I just ask, why shouldn't we require a clear indication that Congress actually considered the tribes? I mean, Justice Kagan points out we do have a detailed list. They clearly considered other entities, and having not considered supposedly or maybe tribes, why isn't that just dispositive of the clear statement issue? Well, I think if — the clear statement rule is a textual rule. The Court doesn't look to legislative history, and the cases that have talked about actually considering tribes, like United States v. Dionne's, a treaty abrogation case, they say, well, you can find the evidence in legislative history. Well, no, I'm talking about the text. We have a list, detailed list, of many kinds of entities, including territories and municipalities and other entities that are spelled out in the definition. Tribes are not included, so why isn't that dispositive? I understand the magic words, you know, sort of take on clear statement, but if the idea is we want to make sure that Congress actually considered the entities that are being affected by this rule, we have evidence that they considered others because they listed them in the statute, and here tribes don't appear, why isn't that just the answer? I think the reason why that's not the answer, Justice Jackson, is because the clear statement rule is a tool for interpreting law in a way of determining congressional intent, not a way of imposing a heightened burden on Congress's exercise of powers that it conceitedly has within the Constitution. And so to say, well, these words do include tribes, which I think, I don't want to mischaracterize Your Honor's hypothetical, but I think that's the thrust of the question. The words include tribes because, by their plain meaning, but because the specific word tribes aren't there, isn't there, we will not presume that Congress meant it. That would, I think, be an approach that this Court has rightfully rejected as inconsistent with the judicial role, excuse me, to construe the law that Congress has applied. Thank you. Thank you, Counsel. Mr. Raynor. Mr. Chief Justice, and may it please the Court. The Bankruptcy Code unequivocally abrogates the sovereign immunity of the United States, states, districts, territories, foreign states, instrumentalities or agencies of any of those governments, and other foreign or domestic governments. That language unambiguously encompasses all governments, including Indian tribes. Petitioners respond principally that the statute does not use the word Indian or tribe, but it's Hornbook law that Congress does not need to use those words to abrogate tribal immunity. Petitioners also suggest that the words foreign or domestic are words of exclusion, designed to exclude tribes and only tribes from an otherwise all-encompassing definition. That's not a plausible understanding of Congressional intent. Instead, Congress chose those words to stress the breadth and comprehensiveness of its chosen definition. I welcome this Court's questions. Well, but I mean, the biggest hurdle I think you have to get over is that they, everywhere else, they use the word tribe, and they didn't here. And they've got a long list of other type of governmental agencies. You don't have to be in the big four or big five, because they're, I don't know, you must have counted them, it looks like at least a dozen. And surely they're in the top dozen. So this is the only instance where they haven't used the word tribe or Indian when they meant to include them, right? This is the only one we're aware of. That doesn't mean there aren't unlitigated statutes out there that might encompass tribes. I will say that there are other contexts in terms of where Congress has abrogated sovereign immunity where they didn't specify particular units of government. So Title VII is a classic example. The Court has found in Fitzpatrick that Title VII abrogates state sovereign immunity, even though it doesn't use the word state. And I don't think Congress's prior practice can be dispositive here for a couple reasons. One is that it would amount to a rule of adverse possession. I think Petitioner's basic argument is that even if Congress wasn't required to use the word tribe at the beginning when it started legislating as to tribes, once it has been hyper clear in all these statutes using the word tribe over and over, its drafting discretion is now constrained going forward. And that's just not how this Court has traditionally thought of clear statement rules. Congress has to provide a clear statement, but what it's done in the past doesn't dictate what counts as a clear statement. Mr. Rander, do you want to take a position on the question that I asked your friend on the other side about if a statement, if Congress enacts a provision that says we abrogate the sovereign immunity of all governments, domestic and foreign, include the United States or not? Yes, we think that would include the United States. And I think actually that hypothetical plays up a weakness in their position because what they are arguing is that by using the phrase foreign or domestic rather than every government, Congress intended that as kind of a convoluted way of excluding these entities that Petitioner's characterized as twilight entities like the IMF or Indian tribes. So rather than using foreign or domestic to make clear that it was covering the waterfront, Congress used that as a back doorway to cut out entities that in Petitioner's view don't fit into either bucket. But we just don't think that's a plausible way to think about what Congress was doing here when it provided this comprehensive list followed by a broad catch-all clause. When you refer to adverse possession, another way to describe that is Congress's customary practice that we discern over time from decades of practice. I think your office relies on that at times, as does the court. So why is the word adverse possession, that term, answer the concern here? Justice Kavanaugh, I acknowledge that Congress's prior practice is probative. The court has looked to that in various cases. I think the problem is that it can't be dispositive in the way that Petitioner's are suggesting. What Petitioner's are suggesting is that Congress has always done this and therefore it's required to do it going forward. I think they're saying it just creates some doubt. And that's enough when the standard is unambiguously abrogated. Right. And I don't think it is sufficient to create an alternative plausible reading. That's what they need to do here is to show that their reading is a plausible one. I don't think that it's sufficient to do that. And as counsel for respondents pointed out, many of these prior statutes are easily distinguishable. So when Congress passes a statute that is specifically targeted at Indian tribes, like the Indian Gaming Regulatory Act is one of their examples, of course that statute is going to use the word Indian or tribe. And a lot of the other statutes, Congress is specifying a subset of governments rather than all governments. And when it does that, it makes sense that Congress would have to list the governments that it's thinking about. It can't use comprehensive language because it's not trying to pick up on the universe of governments like it's doing here. So what's your theory of why tribes or Indians don't appear in this quite long list? It's a hard question. I think this is sort of akin to Paroline, the statutory structure in the Paroline case. I think the best explanation is that Congress was listing the entities that it thought were most likely to be implicated in a bankruptcy proceeding and then added a broad catch-all clause to sleep and everybody else. It wouldn't be that surprising that Congress wasn't thinking of tribes in the 1970s. This was before the modern boom of tribal participation in the economy. This was before the Indian Gaming Regulatory Act, which was passed a decade later. So I don't think it's that surprising that it didn't list tribes. That being said, I would resist the notion that what we're doing here is sort of a subjective inquiry into Congress's intent. I think the test is, did it clearly articulate the inclusion of tribes? And here, the catch-all language is sufficient to do that. I also want to talk for a second about history. My friend on the other side pointed out that the code prior to 1978 treated tribes differently, at least implicitly, than it treated the United States and states and that it didn't accord them a tax preference. I don't think that's provative at all. 1978 is a reset. There was no across-the-board definition of governmental unit in the pre-'78 Bankruptcy Act. 1978, Congress adopts a definition of governmental unit that applies across the board, and it's different in many respects. It includes foreign states, and it also includes a catch-all clause. There's just no presumption here of continuity with the pre-'78 law and the 1978 Code. You're not saying he's mistaken about the pre-'78 history. You're just saying it doesn't translate. Is that correct? Exactly. There's no reason to think that Congress was trying to do the same thing in the 78 Code that it had been doing before. In fact, there's every reason to think that it was trying to depart from the scope of the pre-'78 Code. I'd also like to mention for a moment the operation of the Bankruptcy Code. I don't think the Court needs to get to this because I think the text is clear here, but if you read this language in context of the rest of the Code, it's clear that the rest of the Code would not function the way Congress thought it would function. This is a classic structural analysis. Petitioners try to suggest that this is like an embedded policy analysis, but frequently the Court looks to the effect that an interpretation would have on other provisions in discerning whether that interpretation is correct. Utility or regulatory group, I think, is a case that does this exact same kind of structural analysis. What else do you think gets included in this catch-all clause? That's a hard question. I think we probably agree with petitioners that some interstate compact entities would be included in the catch-all clause. They give the example of WMATA. We're probably on the same page that that would also fall within the catch-all clause. Instrumentalities of tribes would likely fall within the catch-all clause. Instrumentalities are listed in the proceeding. And so this isn't a catch-all clause of one in our view. Well, instrumentalities of tribes really are just like tribes, right? I mean, the structure of the statutory provision is a bunch of things plus their instrumentality, so I don't think that gets you past one. Correct. Well, I mean, but I concede the WMATA points. I mean, that's at least past one. And the list items do treat instrumentalities as separate, but it treats them all as governments. So they would fall in the catch-all clause for that reason. Well, I think WMATA would probably have a better argument that they're not included. I mean, these various governmental agencies like that, some have sovereign immunity, some don't. And to say that they thought about covering WMATA but didn't mention it, that would seem surprising. Our position isn't that they subjectively thought about that. And to be clear, the list isn't limited to entities with sovereign immunity. So it includes municipalities, for example, which don't enjoy sovereign immunity except when they're acting as arms of the state. And whether an interstate compact entity enjoys sovereign immunity will depend on the HES test. And the list is apart from the abrogation section, right? Were those enacted at the same time? Correct. So there was an abrogation enacted in 1978 at the same time as the definitional section in 101-27. The abrogation was expanded in its scope in 1994. But because there was a more limited abrogation in 1978, the clear statement would have applied from the beginning.  There is a clear abrogation here. Congress was thinking about sovereign immunity. It said we are abrogating sovereign immunity. And it said we are doing it to this broad category of governments. This isn't a situation like where Congress has said you can sue a person, and person happens to be defined to include governments. And there's no indication that Congress has thought about immunity specifically. We know here that Congress was thinking about immunity when it provided this broad list of governments. There's no further questions. Justice Thomas? Mr. Rayner, you said that the tribal involvement in the economy has changed since 1978. Does that include the off-reservation commercial activity of tribes? Yes, Justice Thomas. As this Court has noted, tribes are more involved now than they used to be. And I offer that to Justice Kagan as sort of a speculation about why Congress might not have mentioned tribes. But to be clear, none of our argument turns on the degree of tribal involvement in the economy. We think tribes are included in this definition, regardless of how frequently they'll be implicated in bankruptcy proceedings. Justice Alito? Justice Sotomayor? Ms. Gorsuch? Justice Jackson? Justice Barrett? Thank you, counsel. Rebuttal? Thank you, Your Honor. Just like to make two points. First, our position isn't that it's wholly unreasonable to read the phrase in abstract foreign or domestic government as including Indian tribes. There are reasonable arguments that maybe it could be included. But that's not the question here today. Is it unequivocally clear, given the structure that Congress used, serially listing each of the Big Four, Big Five, and a bunch of others, but leaving out Indian tribes? Is it abundantly clear that they wanted to include Indian tribes when adopting that structure? The answer to that has to be no. And there's two strong presumptions that at least create doubt about that. The first is the conceded history. The other side, no doubt, has exhaustively searched the code and cannot find a single example in the history of this country where Congress has abrogated the sovereign immunity of tribes without mentioning tribes. That's not a magic words test. That's simply applying all the cases this Court has said is you don't disregard the standard practice of doing, of Congress enacting legislation when you're interpreting legislation. They try to distinguish one-off examples. Oh, it occurs in the context of Indian tribes. Well, a general statute, you would expect more reason to signify Indian tribes than in Indian statutes. And there are a whole lot of examples that don't fall in that bucket. The Federal Debt Collection Procedures Act, cited on page 25 of our brief, again, nothing to do with tribes, yet enumerates states alongside tribes. The second predicate to that is the fact that when addressing these sort of sovereign entities, certainly when it lists them, it lists all of them. It does it by name. Again, we've cited those statutes on page 24 of our brief. It would be exceedingly odd for a Congress to have gone through all of this trouble and then decide to use a generic catch-all phrase that has never been used in the history of this Court's jurisprudence to refer to Indian tribes, to capture Indian tribes under a clear statement rule. The last point I will make is the Solicitor General argues that it takes on the history of what Congress was trying to do in 1978. Everyone concedes that in the decades preceding the Federal Bankruptcy Code, Congress, in fact, treated tribes differently. It did not extend to them the preferential treatment for tax claims. It continued not to extend to tribes in the 1978 Code preferential treatment for tax claims. That ended up being moved into the definition of governmental units. I can't tell you whether Congress specifically intended, when they used that same definition to cross-reference the abrogation, whether they specifically thought about whether they were including tribes or not. But what I can tell you is they didn't unequivocally include them. Thank you, Your Honor. Thank you, Counsel. The case is submitted.